Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 It has been repeatedly decided by this court that a recovery cannot be had in an action of ejectment in the Federal courts except on a legal title, and the inquiry is, whether the plaintiff in this case is clothed with such a title.
 

 This title rests on the authority of Horace Hawes, acting as prefect of the district, embracing'the then pueblo of San Francisco, under the appointment of the military governor of California and an election by the people of the district, to grant a part of the common lands of the pueblo.
 

 It'is not necessary for the purposes of this suit to decide whether prefects of California, while the same was a part of the Mexican territory, were authorized to make grants of the common or unappropriated lands of the pueblos within their jurisdiction, because in this case the grant was after the conquest and acquisition of the country by the United States, and if the prefect had such authority before that event it clearly ceased with the changed relations of the people. By the conquest of the country, Mexican rule was displaced and with it the authority of Mexican officials to alienate the public domain, and as a necessary consequence of this conquest, the Constitution of the United States, which
 
 *388
 
 gives to Congress the disposition of the public lands, was extended over the territory of California. Until Congress provided a government for the country it was in charge of military governors, who, with the aid of subordinate officers, exercised municipal authority; but the power to grant land or confirm titles was never vested in these military governors,
 
 *
 
 nor in any person appointed by them.
 

 It is contended, however, that Hawes’s election by the people of the pueblo to the office of prefect on the retirement of the Mexican officials, gave him all the power a Mexican prefect would have had if the country had not been conquered. Is this position maintainable ? Pueblos or towns, by the laws of Mexico, were entitled to a certain quantity of lands adjoining them, which were held in trust for the benefit of their inhabitants. The nature and extent of these pueblo rights have been the subject of a great deal of controversy since the acquisition of California, and came before this court for consideration in the case of
 
 Townsend
 
 v. Greeley.
 
 †
 
 Mr. Justice Field, in delivering the opinion of the court in that case, says: “It may be difficult to state with precision the exact nature of the right or title which the pueblos held in these lands. It was not an indefeasible estate; ownership of the lauds in the pueblos could not in strictness be affirmed. It amounted in truth to little more than a restricted or qualified right to alienate portions of the land to its inhabitants for building or cultivation and to use the remainder for commons, for pasture-lands, or as a source of revenue or for other public purposes. This right of disposition and use was in all particulars subject to the control of the government of the country.” Manifestly, if this right of disposition and use were subject to Mexican control while Mexican rule prevailed, it was equally subject to the control of our government when this rule was cnanged. It must be conceded that these pueblos had an equitable right to have their common lands confirmed to them, but they did not hold them as a private individual
 
 *389
 
 does his estate, and it needed legislative action to ripen this equitable right into a legal title. Congress has acted upon this subject and confirmed the lands of the pueblo of San Francisco, including the demanded premises, and this confirmation could not enure to the benefit of any one claiming under a grant by an American prefect, unless there were an express declaration to that effect. As there is no pretence that the grant in this case was protected by legislation, it follows that the plaiutifi’ has no title of any sort to rest upon.
 

 Judgment affirmed.
 

 *
 

 Mumford
 
 v.
 
 Warden, 6 Wallace, 435.
 

 †
 

 5 Wallace, 336.